IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

CHRIS BRAY,
SABINE BRAY,
TRAINING PROS INC.,
JEHAD MAJED,
ALI MAJED,
Q FOOD SERVICE, INC.,
BRAD FIX,
JAN FIX,
BJ AND F LLC,
RICHARD NEWKIRK,
MAUREEN NEWKIRK,
DAVID NEWKIRK,
NEWKIRK ENTERPRISES, INC.,
R&M ENTERPRISES LLP,
HAKIM ABID,
ALLISON ABID,
DANIEL G. CARTER, JR.,
JODY L. CARTER,
DANIEL G. CARTER, SR.,
MADELEINE CARTER,
CARTER GROUP LLC,
CARTER GROUP ROSEVILLE LLC,
GLENN KEANE,
ANNE KEANE,
LKB LLC,
DAVID TATE,
BIG LITTLE PROPERTY INVESTMENTS, and
CTH INVESTMENTS,

      Plaintiffs,

vs.

QFA ROYALTIES LLC,

      Defendant.

Dockets.Justia.com

---

**COMPLAINT AND JURY DEMAND**

---

The plaintiffs, by and through their counsel, Gregory R. Stross, complain as follows:

**JURISDICTION AND VENUE**

1. This Court has subject matter jurisdiction over this action based on the diversity of citizenship of the parties pursuant to 28 U.S.C. § 1332(a) inasmuch as it involves citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs. This Court may also exercise supplemental jurisdiction over the plaintiffs' state law claims pursuant to 28 U.S.C. § 1367. This Court has personal jurisdiction over the defendant because of a forum selection clause contained in the various franchise agreements at issue in this action.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because it is where the defendant resides.

**PARTIES**

3. Plaintiffs Chris and Sabine Bray (the "Brays") are husband and wife, who are citizens of Texas residing at 1378 Pecan Creek Road, Killeen, Texas 76549. Chris Bray is the President of the Toasted Subs Franchisee Association, Inc. ("TSFA") and serves on its board of directors. The Brays are proper party plaintiffs in this action because they will be irreparably harmed if the defendant is allowed to proceed with the franchise terminations alleged in this Complaint.

4. Plaintiff Training Pros Inc. ("TPI") is a Texas corporation with a principal place of business at 1378 Pecan Creek Road, Killeen, Texas 76549. The Brays own all outstanding shares of TPI. TPI is a party to a Franchise Agreement executed on April 30, 1997 for the operation of Quiznos Store No. 370, located at 4400 East Centex Expressway, Unit 2-A, Killeen,

Texas 76543. TPI is also a party to a Franchise Agreement executed on October 7, 1998 for the operation of Quiznos Store No. 838, located at 1200 Willow Springs Rd., Killeen, Texas 76549.

5. Plaintiffs Jehad and Ali Majed (the "Majeds") are son and father, who are citizens of Michigan residing at 7621 W. Morrow Circle, Dearborn, Michigan 48126. Jehad Majed is the Vice President of the TSFA and serves on its board of directors. The Majeds are parties to a Franchise Agreement executed on August 29, 2003 for the operation of Quiznos Store No. 5731, located at 8471 N. Telegraph Rd., Dearborn Heights, Michigan 48127.

6. Plaintiff Q Food Service, Inc. ("Q Food") is a Michigan corporation with a principal place of business at 8471 N. Telegraph Road, Dearborn Heights, Michigan 48127. The Majeds own all outstanding shares of Q Food. Q Food is a proper party plaintiff in this action because it will be irreparably harmed if the defendant is allowed to proceed with the franchise termination alleged in this Complaint.

7. Plaintiffs Brad and Jan Fix (the "Fixes") are son and mother, who are citizens of Montana. Brad resides at 23 Meadowlark Drive, Kalispell, Montana 59901. Jan Fix resides at 2209 Suzanne Ct, Missoula, Montana 59801. Brad Fix is a member of the board of directors of the TSFA. The Fixes are parties to a Franchise Agreement executed on March 31, 1997 for the operation of Quiznos Store No. 353, located at 1001 E. Broadway St., Unit 3, Missoula, Montana 59802.

8. Plaintiff BJ and F LLC ("BJ & F") is a limited liability company organized under the laws of Montana. BJ & F is a party to a Franchise Agreement executed on August 3, 1998 for the operation of Quiznos Store No. 770, located at 2101 Brooks St., Missoula, Montana 59801. It is also a party to a Franchise Agreement executed on July 31, 2002 for the operation of Quiznos Store No. 701, located at 135 W. Idaho St., Kalispell, Montana 59901. BJ & F is a

proper party plaintiff in this action because it will be irreparably harmed if the defendant is allowed to proceed with the franchise terminations alleged in this Complaint. The Fixes own all membership interests in BJ & F.

9. Plaintiffs Richard and Maureen Newkirk (the "Newkirks") are husband and wife, who are citizens of Montana residing at 3347 Duck Creek Road, Billings, Montana 59101. Richard Newkirk is a member of the board of directors of the TSFA. The Newkirks are parties to a Franchise Agreement executed on July 19, 1998 for the operation of Quiznos Store No. 771, located at 2564 King Ave., No. F, Billings, Montana 59102. Richard Newkirk is also a party to a Franchise Agreement executed on June 28, 2002 for the operation of Quiznos Store No. 125, located at 2404 W. Main St., Suite 8, Bozeman, Montana 59715.

10. Plaintiff David Newkirk ("David Newkirk") is an adult citizen of Oregon residing at 15730 Pineloop Drive, Lapine, Oregon 97739. Mr. Newkirk is named in this lawsuit solely due to his relationship as a party to the Franchise Agreements for Quiznos Store Nos. 771 and 125. David Newkirk is the father of Richard Newkirk. He is elderly and is no longer involved in store operations.

11. Plaintiff Newkirk Enterprises, Inc. ("Newkirk Enterprises") is a Montana corporation with a principal place of business at 3347 Duck Creek Road, Billings, Montana 59101. Newkirk Enterprises is a proper party plaintiff in this action because it will be irreparably harmed if the defendant is allowed to proceed with the franchise terminations alleged in this Complaint. The Newkirks own all outstanding shares of Newkirk Enterprises.

12. Plaintiff R&M Enterprises LLP ("R&M") is a limited liability company organized under the laws of Montana. R&M is a proper party plaintiff in this action because it will be

irreparably harmed if the defendant is allowed to proceed with the franchise terminations alleged in this Complaint. The Newkirks own all membership interests in R&M.

14. Plaintiffs Hakim and Allison Abid (the "Abids") are husband and wife, who are citizens of Minnesota residing at 7545 Blackoaks Lane N, Maple Grove, Minnesota 55311. Allison Abid is a member of the board of directors of the TSFA. Hakim Abid is a party to a Franchise Agreement executed on May 17, 2002 for the operation of Quiznos Store No. 3652, located at 5600 La Centre Ave., Unit 105, Albertville, Minnesota 55301. Hakim Abid is also a party to a Franchise Agreement executed on June 1, 2002 for the operation of Quiznos Store No. 3653, located at 16362 County Road 30, Maple Grove, Minnesota 55311. Allison Abid is a proper party plaintiff in this action because she will be irreparably harmed if the defendant is allowed to proceed with the franchise terminations alleged in this Complaint.

14. Plaintiffs Daniel G. and Jody L. Carter, Jr. (the "Junior Carters") are husband and wife, who are citizens of Michigan residing at 19454 Willoway Drive, Macomb, Michigan 48044. Daniel G. Carter, Jr. is a member of the board of directors of the TSFA. The Junior Carters are parties to a Franchise Agreement executed on September 27, 2002 for the operation of Quiznos Store No. 4199, located at 24955 Gratiot Ave., Eastpointe, Michigan 48021. The Junior Carters are also parties to a Franchise Agreement executed on December 8, 2003 for the operation of Quiznos Store No. 6514, located at 31931 Gratiot Ave., Roseville, Michigan 48066.

15. Plaintiffs Daniel G. and Madeleine Carter, Sr. (the "Senior Carters") are husband and wife, who are citizens of Michigan residing at 39741 Memory Lane, Harrison Township, Michigan 48045-1761. The Senior Carters are the parents of Daniel G. Carter, Jr. Like their son and daughter-in-law, the Senior Carters are parties to the Franchise Agreements governing Quiznos Store Nos. 4199 and 6514.

16. Plaintiff Carter Group LLC ("Carter Group") is a limited liability company organized under the laws of Michigan. Carter Group is a proper party plaintiff in this action because it will be irreparably harmed if the defendant is allowed to proceed with the franchise termination alleged in this Complaint. The Junior Carters and Senior Carters own all membership interests in the Carter Group.

17. Plaintiff Carter Group Roseville LLC ("Carter Roseville") is a limited liability company organized under the laws of Michigan. Carter Roseville is a proper party plaintiff in this action because it will be irreparably harmed if the defendant is allowed to proceed with the franchise termination alleged in this Complaint. The Junior Carters and Senior Carters own all membership interests in Carter Roseville.

18. Plaintiffs Glenn and Anne Keane (the "Keanes") are husband and wife, who are citizens of Connecticut residing at 2 Naugatuck Avenue, Shelton, Connecticut 06484. Anne Keane is a member of the board of directors of the TSFA. The Keanes are proper party plaintiffs in this action because they will be irreparably harmed if the defendant is allowed to proceed with the franchise terminations alleged in this Complaint.

19. Plaintiff LKB LLC ("LKB") is a limited liability company organized under the laws of Connecticut. LKB is a party to a Franchise Agreement executed on March 22, 2004 for the operation of Quiznos Store No. 7081, located at 64 Division St., Derby, Connecticut 06418. The LKB is a proper party plaintiff in this action because it will be irreparably harmed if the defendant is allowed to proceed with the franchise terminations alleged in this Complaint. The Keanes own all membership interests in LKB.

20. Plaintiff David Tate ("Tate") is an adult citizen of Ohio residing at 2579 Channing Rd., University Heights, Ohio 44118. He is a member of the board of directors of the

TSFA. Tate is a proper party plaintiff in this action because he will be irreparably harmed if the defendant is allowed to proceed with the franchise terminations alleged in this Complaint.

21. Plaintiff Big Little Property Investments LLC ("Big Little") is a limited liability company organized under the laws of Ohio. Big Little is a party to a Franchise Agreement executed on February 3, 2004 for the operation of Quiznos Store No. 6716, located at 209 Center St., Chardon, Ohio 44024. Tate is a member of Big Little.

22. Plaintiff CTH Investments ("CTH") is a company organized under the laws of Ohio. CTH is a party of a Franchise Agreement executed on August 26, 2003 for the operation of Quiznos Store No. 5647, located at 9582 Diamond Center Dr., Mentor, Ohio 44060. Tate owns an interest in CTH.

23. Defendant QFA Royalties LLC ("QFA") is a Delaware limited liability company with its principal place of business at 1475 Lawrence Street, Suite 400, Denver, Colorado 80202. QFA succeeds to the rights and liabilities of each and every franchisor who granted a franchise to the plaintiffs. In communications with plaintiffs from December 8, 2006, QFA contends that it alone has the right to terminate the franchises that are the subject of this action.

**GENERAL ALLEGATIONS**

24. Plaintiff Chris Bray, with certain other Quiznos franchisees, founded the TSFA in December 2001. Since its formation, the TSFA has assisted countless Quiznos franchisees with operational issues, franchise system outreach and education, and store management. The TSFA is a Delaware corporation, which runs itself through a board of directors of 10 Quiznos franchisees from around the United States. The individuals comprising he TSFA board of directors are all plaintiffs with the exception of two members who no longer operate restaurants.

25. In April 2005, Bhupinder "Bob" Baber and his wife Ratti Baber filed a civil action against various Quiznos-related entities in California Superior Court (Los Angeles County, South District, NC036893). The Babers owned two Quiznos franchises in California and filed suit to remedy what they believed were targeted frauds against them by Quiznos in relation to their franchises. Mr. Baber formed an association similar to the TSFA in California called the Quiznos Subs Franchise Association ("QSFA"). It consisted of a network for California-based Quiznos franchisees.

26. Defendant QFA and its various affiliates (collectively "Quiznos") set out to target and attack Mr. Baber and the QSFA due to their outspoken positions over the franchise relationship with Quiznos. To this end, Quiznos pretextually terminated the Babers' franchises and on two occasions sued them in an effort to impede their First Amendment rights guaranteed under the United States Constitution. Through a litany of lawsuits and proceedings, the courts concluded that the Babers' claims should be arbitrated. On October 31, 2006, the California Court of Appeals ruled that the Babers' action should be arbitrated in Denver, Colorado, Quiznos' home district. By this time, the Babers had spent approximately $100,000 litigating with Quiznos. They could no longer afford to litigate against Quiznos.

27. On November 27, 2006, Mr. Baber visited a Quiznos restaurant in Whittier, California. He spent some time talking with the manager and drinking a soda. Mr. Baber then excused himself to use the restroom. He stepped into the restroom and removed a gun that he had concealed up to this point. Mr. Baber then proceeded to shoot himself in the chest three times. He died from his self-inflicted gunshot wounds that day.

28. Mr. Baber left two suicide notes. The first note was personal, to his wife and three children. Its contents have never been shared with the TSFA. Mr. Baber's second note,

8

however, was specifically directed to all Quiznos franchisees, the media and the public at large. Copies of this second suicide note were found on Mr. Baber's body at the scene of the incident and on his computer at home. These facts are confirmed by Mr. Baber's widow and law enforcement personnel who investigated the matter.

29. Unfortunately, Mr. Baber died without any life insurance or other death benefits, leaving his wife and children financially destitute. Ratti Baber had to borrow money to pay for her husband's funeral costs.

30. Certain members of the TSFA board of directors, acting independently and without consultation of the board as a group, decided it was appropriate to assist the Baber Family in its time of need. The TSFA maintains a website at www.tsfa.info, which those members decided to use as a means to create a tribute to the man who worked hard and sacrificed tremendously in pursuing an entrepreneurial dream in his adopted home, the United States of America. In creating the dedication to Mr. Baber, the TSFA provided three links. The first allowed readers to access a newspaper article regarding the incident from the <u>Whittier Daily News</u>. The second link allowed readers to access Mr. Baber's suicide note that he intended to have read by the public. The TSFA obtained its copy of the suicide note directly from Ratti Baber who, more than anyone, would know of its authenticity and meaning. Finally, the TSFA provided a link to allow those interested to contribute money to a memorial fund that would go the Baber Family. The TSFA posted the memorial to Mr. Baber for the first time on December 7, 2006. A true and correct copy of the screen shots from these WebPages are attached as an exhibit to Jahed Majed's Declaration filed separately.

31. On December 8, 2006, within days of the TSFA posting regarding Mr. Baber, QFA, through its national franchise counsel DLA Piper, issued written notices of termination to

each TSFA board member who maintained a Quiznos franchise. While a few of the TSFA franchisees received their notices on Saturday morning, December 9, 2006, the majority learned of their contemplated terminations throughout the day on Monday, December 11, 2006. The termination letters were all substantially the same and not a single one identified what specifically the TSFA franchisees did to violate their Franchise Agreements. While inviting the recipients to "cure" the alleged defaults under those agreements, QFA failed to advise what the TSFA franchisees could do to remedy the situation. True and correct copies of QFA's termination notices are attached as exhibits to each declaration filed by eight plaintiffs in this action.

32. Through email and other written communications over the ensuing days, the plaintiffs came to learn that it was their association with the TSFA (or merely association with family members who are TSFA board members) that had resulted in their terminations as franchisees. While not ruling out the opportunity to cure, QFA and its affiliates constructively prohibited such cure by making the cure obligations unattainable and illegal. A December 11, 2006 email from DLA Piper's Fredric Cohen to plaintiff Anne Keane exemplifies QFA's views on the cure:

> "Cohen, Fredric A." <Fredric.Cohen@dlapiper.com> wrote:
> Subject: RE: Termination Notice Received 12/11/06 - Store #7081 - Derby, CT
> Date: Wed, 13 Dec 2006 11:24:07 -0600
> From: "Cohen, Fredric A." <Fredric.Cohen@dlapiper.com>
> To: "keanecrew" <keanecrew@sbcglobal.net>
> Ms. Keane:
>
> Thank you for taking the time to speak with me this morning. This will confirm our conversation concerning the steps that must be taken by you, Glenn Keane, and LKB, LLC, to cure the default upon which the December 8, 2006 termination notice is based.
>
> First, you must cause the immediate retraction of the material on the TSFA website relating to Mr. Baber, including the letter allegedly drafted by Mr. Baber.
>
> Second, you must cause to be posted on the TSFA website an acknowledgment that the posting of that material was both morally reprehensible and in violation of your contractual commitments under your franchise agreement, and harmed the Quiznos

10

brand and damaged the goodwill associated with the Quiznos name and marks.

Third, you must cause to be posted on the TSFA website an apology to your fellow franchisees and to Quiznos for the harm and damage caused by the posting of that material.

Fourth, you must execute a written reaffirmation and acknowledgment of your existing contractual obligations not to engage in conduct that harms the Quiznos brand or impairs the goodwill associated with the Quiznos names and marks, including by means of TSFA website postings, press releases, or any other communication intended to or that you reasonably should know will harm the Quiznos brand or damage the Quiznos names and marks. This reaffirmation will also include a general release of any and all claims against Quiznos. The reaffirmation is not intended to inhibit or prevent any right of association or of expression that may or may not exist under state law or otherwise, but only to reaffirm your <u>existing</u> contractual obligations under your franchise agreement, and to protect the brand, name and marks upon which the livelihoods of thousands of Quiznos franchisees across the country and abroad depend.

Should you have any questions concerning the foregoing, please feel free to call or to respond to this e-mail.

**Fredric A. ("Ric") Cohen**
Partner
**DLA Piper US LLP**
203 North LaSalle Street, Suite 1900
Chicago, Illinois 60601-1293
T 312.368.7066
F 312.630.5377
M 312.749.9057
fredric.cohen@dlapiper.com
www.dlapiper.com

(12/13/06 Cohen Email, Keane Decl. Exh. D.)

33.    QFA's notices of termination have little to do with the Quiznos brand. Rather, they seek to destroy the TSFA and the rights of all franchisees to freely associate and speak out against illegal and fraudulent conduct. This pattern of using coercive tactics to frighten the mass of franchisees is an ongoing Quiznos ploy. In the Summer of 2006, Quiznos sued various outspoken franchisees for speaking up. QFA's actions are illegal. Plaintiffs seek equitable relief to prohibit their terminations from taking effect, monetary damages where allowed, and attorneys' fees.

**FIRST CLAIM FOR RELIEF**
(Breach Of Contract - All Plaintiffs)

34. Plaintiffs reallege paragraphs 1 through 33 as if set forth in full.

35. Upon information and belief, the posting on the TSFA Website of the Baber suicide note and related web-based material is the bases by which the QFA asserts that each plaintiff undertook "conduct [that], in the sole judgment of Quiznos, materially impairs the goodwill associated with [Quiznos] marks" in violation of the provisions of the plaintiffs' respective Franchise Agreements.

36. The posting of the contents of the Baber suicide note and related web-based material does not materially impair the goodwill associated with Quiznos' marks and therefore does not violate the provisions of the respective plaintiffs' Franchise Agreements that form the basis for the termination notices sent by Quiznos to the plaintiffs. Accordingly, Quiznos' efforts to terminate plaintiffs' franchises constitute breaches of contract.

37. Alternatively, if Quiznos asserts that the provisions of the plaintiffs' respective Franchise Agreements grant to Quiznos the unfettered discretion to assert any conduct it desires as a "material impairment" of its goodwill, then those provisions are unconscionable and accordingly void and unenforceable. Accordingly, by basing its termination efforts on unenforceable provisions of the Franchise Agreements, Quiznos has breached those agreements.

38. As a result of Quiznos' breaches of contracts, plaintiffs have suffered irreparable harm for which there exists no adequate remedy at law.

**SECOND CLAIM FOR RELIEF**
(Coercion of First Amendment Free Speech Rights - All Plaintiffs)

39. Plaintiffs reallege paragraphs 1 through 38 as if set forth in full.

40. The actions demanded by QFA and its affiliates as "cures" for the purported breaches of plaintiffs' respective Franchise Agreements include, among other things, "retraction" of the Baber suicide note (which plaintiffs did not write), an affirmative statement that the posting of the note and other material regarding Mr. Baber was "morally reprehensible" and was harmful to the Quiznos brand, and an apology to Quiznos franchisees for posting the material regarding Mr. Baber.

41. The statements that QFA demands as a condition for restoring plaintiffs' respective Franchise Agreements are statements with which plaintiffs do not agree and which they would not make of their own free will. As a result, plaintiffs are faced with the untenable choice between engaging in compelled speech which is repugnant to them and not believed by them, or losing their Quiznos franchises.

42. In addition, the actions sought to be compelled by QFA would deter plaintiffs from associating among themselves, both through the TSFA and otherwise, to discuss and express the concerns they have as members of the Quiznos franchise system.

43. With respect to plaintiff Brays, whose termination notice purported to take effect immediately and did not afford any "cure" opportunity, the actions of QFA and its affiliates are a direct and immediate punishment for statements and activities protected by the First Amendment to the United States Constitution.

44. The foregoing conditions sought to be imposed by Quiznos as part of the "cure" demanded by QFA chills the plaintiffs' ability to speak out and associate with other franchisees, and therefore threatens plaintiffs' rights under the First Amendment to the United States Constitution.

45. The extant chilling effect upon the plaintiffs' exercise of their First Amendment rights as alleged herein, and the threatened future violations and coercion of those rights, have caused plaintiffs irreparable harm which has no adequate remedy at law.

### THIRD CLAIM FOR RELIEF
(Violation Of Michigan Franchise Investment Law - Plaintiffs Jehad Majed, Ali Majed, Q Food Service, Inc., Daniel G. Carter, Jr., Jody L. Carter, Daniel G. Carter, Sr., Madeleine Carter, Carter Group LLC, Carter Group Roseville LLC)

46. Plaintiffs reallege paragraphs 1 through 45 as if set forth in full.

47. The franchises of the Majed Plaintiffs and the Carter Plaintiffs are located in the State of Michigan, and are therefore subject to the provisions of the Michigan Franchise Investment Law, MCLA § 445.1501 *et seq*.

48. The notices of termination sent by QFA to the Majed Plaintiffs and the Carter Plaintiffs violate MCLA § 445.1527 in at least the following respects: (a) the conduct alleged by Quiznos as the basis for termination does not constitute "good cause" for termination under the law; (b) the "cure" demanded by Quiznos is objectively unreasonable; and (c) the "cure" period afforded by Quiznos is unreasonably short. Additionally and contrary to the Michigan Franchise Investment Law, the notice of the termination of failed to properly specify the grounds or because of termination of the agreement.

49. As a result of Quiznos' attempts to terminate the franchises of the Majed Plaintiffs and the Carter Plaintiffs in violation of their statutory rights, the Majed Plaintiffs and the Carter Plaintiffs have suffered irreparable harm for which they have no adequate remedy at law.

### FOURTH CLAIM FOR RELIEF
(Violations Of Minnesota Franchise Act - Plaintiffs Hakim Abid And Allison Abid)

50. Plaintiffs reallege paragraphs 1 through 49 as if set forth in full.

51. The Abid Plaintiffs' franchise is located in the State of Minnesota and is therefore subject to the provisions and protections of the Minnesota Franchise Act, Minn. Stat. Ann. § 80C *et seq*.

52. The notice of termination sent by QFA to the Abid Plaintiffs violates Minn. Stat. Ann. § 80C.14 in at least the following respects: (a) the conduct alleged by QFA as the basis for termination does not constitute "good cause" for termination under the law; and (b) the "cure" demanded by QFA is objectively unreasonable.

53. As a result of QFA's attempts to terminate the franchises of the Abid Plaintiffs in violation of their statutory rights, the Abid Plaintiffs have suffered irreparable harm for which they have no adequate remedy at law.

### FIFTH CLAIM FOR RELIEF
(Violation Of Connecticut Franchise Act –
Plaintiffs Glenn Keane, Anne Keane And LKB LLC)

54. Plaintiffs reallege paragraphs 1 through 53 as if set forth in full.

55. The Keane Plaintiffs' franchise is located in the State of Connecticut and is therefore subject to the provisions of the Connecticut Franchise Act, Conn. Gen. Ann. § 42-133e *et seq*.

56. The notice of termination sent by QFA to the Keane Plaintiffs violates Conn. Stat. Ann. § 42-133f in at least the following respects: (a) the conduct alleged by QFA as the basis for termination does not constitute "good cause" for termination under the law; and (b) the "cure" demanded by QFA is objectively unreasonable.

57. As a result of QFA's attempts to terminate the franchise of the Keane Plaintiffs in violation of their statutory rights, the Keane Plaintiffs have suffered irreparable harm for which they have no adequate remedy at law.

### SIXTH CLAIM FOR RELIEF
(Breach Of The Covenant Of Good Faith And Fair Dealing - All Plaintiffs)

58. Plaintiffs reallege paragraphs 1 through 57 as if set forth in full.

59. The Franchise Agreements between all plaintiffs and QFA, like all contracts, impose upon the parties an implied obligation to act in good faith and to deal with each other fairly.

60. The QFA has attempted to terminate the plaintiffs' Franchise Agreements based on the posting by plaintiffs on the TSFA Website of the verbatim text of the Baber suicide note and related Web-based information, which was intended to be an expression of sympathy for Mr. Baber's grieving family and an appeal to fellow franchisees to help the Baber family's desperate financial straits. QFA's terminating of the plaintiffs' agreements on this basis is an unwarranted and unreasonable interpretation of the Franchise Agreements. It is, in fact, another effort in series of similar actions by Quiznos' comprising a large campaign to terrorize and intimidate those members of the franchise system who have the temerity to speak their minds. Quiznos' efforts to terminate plaintiffs' Franchise Agreements under these circumstances constitute breaches of the implied covenants of good faith and fair dealing inherent in each agreement.

61. QFA's breaches of the implied covenants of good faith and fair dealing in the plaintiffs' respective Franchise Agreements have caused irreparable harm to the plaintiffs for which they have no adequate remedy at law.

WHEREFORE, Plaintiffs respectfully request the following relief:

(a) An Order granting a preliminary injunction enjoining QFA and its affiliates from terminating the plaintiffs' franchises or otherwise disrupting their operations based upon the factual background and circumstances described in this Complaint; and further directing that the status quo be maintained until the matter can be determined at trial;

(b) An Order granting permanent injunctive relief enjoining QFA and its affiliates from terminating the plaintiffs' franchises or otherwise disrupting their operations based upon the factual background and circumstances described in this Complaint;

(c) Judgment granting plaintiffs compensatory damages in amount to be determined at trial;

(d) Judgment granting plaintiffs their attorneys' fees and costs; and

(e) Such other relief as the Court deems just and equitable.

**PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL CLAIMS SO TRIABLE**

DATED:   December 15, 2006
         Denver, Colorado

>                   GREGORY R. STROSS
>                   ATTORNEY AT LAW
>
>                   By: *s/Gregory R. Stross*
>                       Gregory R. Stross
>                       2940 Wells Fargo Center
>                       1700 Lincoln Street
>                       Denver, Colorado 80203
>                       Telephone 303-339-0647
>                       Facsimile 303-572-5111
>                       gstross@earthlink.net