IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  06-cv-02528-JLK-CBS

_____

BRAY, *et al.*

      Plaintiffs,

v.

QFA ROYALTIES LLC, a Delaware limited liability company,

      Defendant.

_____

**PLAINTIFFS' TRIAL BRIEF FOR HEARING ON PRELIMINARY INJUNCTION**

_____

PROCEDURAL HISTORY OF THE CASE ................................................................ 2

PLAINTIFFS' CLAIMS AND RELIEF SOUGHT ..................................................... 4

FACTUAL ISSUES FOR DETERMINATION BY THE COURT ............................. 6

LEGAL ISSUES FOR DETERMINATION BY THE COURT ................................... 8

    I.      Standards for Preliminary Injunctive Relief. .......................................... 8

          *a.*     *Federal Standard for Preliminary Injunctive Relief under*
               *Rule 65.* ......................................................................................... 8

          *b.*     *Minn. Franchise Act & State Law Termination Protections* ................... 10

                   Abid - Minnesota Franchise Law ................................................. 10

                 ii.     Fix – Montana Franchise Law .......................................... 11

                 iii.    Bray – Texas Choice of Law ............................................ 13

                   Colorado Law .............................................................................. 13

          *c.*     *Irreparable Harm.* ...................................................................... 15

          *d.*     *Substantial Likelihood The Movant Ultimately Will Prevail*
               *On The Merits.* ............................................................................ 17

          *e.*     *Threatened Injury To The Movant Outweighs Any Harm*
               *The Proposed Injunction May Cause The Opposing Party.* ..................... 18

          *f.*     *The Injunction Would Not Be Contrary To The Public*

        *Interest.* ..................................................................................................... *19*

    II.      Asserted Bases for Terminations. ......................................................... 19

    III.    Written Agreements - Three Remaining Plaintiffs. .............................. 20

        *a.*      *Termination Provisions*............................................................. *20*

        *b.*      *Choice of Law Provisions* ......................................................... *23*

PLAINTIFFS' WITNESSES & TESTIMONY SUMMARIES .................................... 23

EXHIBITS INTENDED TO BE INTRODUCED AT HEARING ............................. 27

## PROCEDURAL HISTORY OF THE CASE

On December 15, 2006 plaintiffs filed a Complaint & Jury Demand ("Complaint"). CM/ECF #1. Plaintiffs also filed a Motion for Preliminary Injunction and Request for Forthwith Hearing ("Motion"), with a supporting brief. CM/ECF #2 & #3. The original 28 plaintiffs composed eight distinct groups of Quiznos franchisees, each group operating more than a single restaurant. In initiating the case, a plaintiff from each of the eight groups filed a supporting Declaration. CM/ECF ##4-11.

The Court set plaintiffs' Motion for hearing on December 22, 2006. Defendant filed a motion seeking to take expedited discovery (CM/ECF #12), which was denied by Minute Order on December 19, 2006 (CM/ECF #15). After the December 22, 2006 hearing, the Court entered an order that provided as follows: the parties would maintain their status quo ante positions, an evidentiary hearing on the motion for preliminary injunctive relief would be conducted on February 12-14, 2007, and the parties would undertake expedited discovery by cooperative arrangements. CM/ECF #24.

Despite the Court's order directing the parties to maintain the status quo ante, after the December 22, 2006 hearing defendant served each of the plaintiffs in this matter with a complaint in

six separately-filed cases in Denver District Court.[1]  These cases had been filed on December 12, 2006.  Plaintiffs indicated to defendant that they regarded the serving of these suits as a violation of this Court's Order to preserve the status quo ante and counsel subsequently agreed to hold those Denver cases in abeyance until after the scheduled hearing in this matter.

Defendant filed a Response to Plaintiffs' Motion for Preliminary Injunction ("Response") on February 1, 2007.  CM/ECF #31.

The parties established an informal discovery schedule that provided for limited depositions, interrogatories and requests for production to be completed in the short pre-hearing period.  Further, as part of a stipulated discovery motion approved by the Court, it was agreed that defendant would not be required to file an answer to the Complaint in this matter until fifteen days following the Court's ruling on the preliminary injunction motion.  CM/ECF #27.

The parties exchanged and responded to interrogatories and requests for documents.  Plaintiffs also propounded several requests for admissions to defendant.  Depositions were taken of the three remaining plaintiffs (Allison Abid, Christopher Bray and Brad Fix), and Jehad Majed, who agreed to settle his claims with the defendant.

Pursuant to F.R.Civ.P. 30(b)(6), two designees of defendant Quiznos (General Counsel - Patrick Meyers and V.P. of Litigation Management - Carri Bryan) were deposed.  Additionally, depositions were taken in California of Ratty Baber and Whittier Police Department designee Lt. J. Piper, primarily for the purpose of establishing the authenticity of the Baber-suicide note posted on the TSFA website, to which defendant had refused to stipulate.

During the discovery period, five of the eight plaintiff groups (Majeds, Carters, Keanes,

---

[1]    *QFA Royalties LLC v. Hakim Abid*, Denver District Court - 06cv12744; *QFA Royalties LLC v. David Tate*, Denver District Court - 06cv12750; *QFA Royalties LLC v. Dan Carter, Jr.*, Denver District Court - 06cv12747; *QFA Royalties LLC v. Brad Fix*, Denver District Court - 06cv12752; *QFA Royalties LLC v. Anne Keane*, Denver

Newkirks, and Tates) reached settlement terms with Quiznos. These plaintiffs have agreed to dismiss their claims in this case, provide comprehensive releases of all possible claims against Quiznos and, in exchange, Quiznos will withdraw and forebear from pursuing terminations against them based upon the TSFA publication of the Baber-suicide materials. Further, Quiznos agreed to dismiss the individually-filed suits against these plaintiffs in Denver District Court. A component of the settlement with these five plaintiffs is a concurrent settlement of the case of *QFA Royalties, LLC, et al. v. TSFA*, U.S.D.C 06-CV-01576-WYD-CBS.

In the *QFA Royalties, LLC, et al. v. TSFA*, TSFA has agreed to alter its website such that it will present a general-information webpage to the public, but all other materials (including the franchisees' forum for comments and discussion), will be password or member-only protected. Thus, the public will not have access in the future to members' comments concerning its brand or operations. These settlements have not yet been finalized, nor dismissals of the cases sought, but the settlements have been considered by all parties to be complete in their terms and fully agreed upon.

Remaining plaintiffs Allison Abid, Christopher Bray and Brad Fix, each representing their respective franchise group, intend to proceed to hearing on February 12, 2007.

## PLAINTIFFS' CLAIMS AND RELIEF SOUGHT

The allegations in the complaint remain unchanged. The factual events as pleaded are essentially uncontested and the limited, expedited discovery has only substantiated the events alleged.

The evidence at trial will show that before the events giving rise to this action, Quiznos had previously initiated numerous lawsuits against the Toasted Subs Franchise Association (TSFA), plaintiff Bray, plaintiff Majed and other individuals who had spoken out against

---

District Court - 06cv12748; *QFA Royalties LLC v. Richard Newkirk*, Denver District Court - 06cv12751;

Quiznos' practices on the TSFA website forum.

One former franchisee, also previously subject to extensive litigation with Quiznos, was Bob Baber of Los Angeles, whose two Quiznos restaurants had essentially failed. Mr. Baber had attempted to start his own franchisee association and was a known, vocal critic of Quiznos' treatment of franchisees.

On November 27, 2006 Mr. Baber committed suicide in a Quiznos restaurant in Whittier, California. He left a suicide note entitled Note To The Media, in which he explained his reasons for suicide and criticized the Quiznos franchise operations. His wife, Ratty Baber, located the suicide note on the computer used by Bob Baber and sent it to plaintiff Majed, one of the board members of the TSFA.

The TSFA is an independent franchisee association, primarily run by its president, plaintiff Christopher Bray. In early December of 2006 it had a total of 10 board members, eight of whom owned operating Quiznos restaurants. Upon learning of Bob Baber's death from plaintiff Majed, the TSFA board members conducted a telephonic meeting and decided to establish a memorial fund for his family by soliciting for funds on the TSFA website. Plaintiff Allison Abid, a board member, was out of the country and did not participate in the board meeting or in any of the activities giving rise to this case.

Following the board meeting, plaintiffs Bray and Majed determined what materials would be posted on the TSFA website as part of the memorial for Bob Baber. They included on the website several pictures of Bob Baber, a reprinting of the entire story published in the *Whittier News*, and a reprinting of the entire suicide note left by Bob Baber.

Immediately upon learning of this suicide-note publication on the TSFA website, general

legal counsel for Quiznos, Pat Meyers, directed that the Franchisee Agreements of each TSFA board member be terminated.  Without conducting or directing any investigation into the background of the website publication, Pat Meyers instructed outside counsel to send overnight notices of termination (or default to be followed by termination), which was done on approximately December 8, 2006.

Plaintiffs filed this action on December 15, 2006 asserting six causes of action that included 1) breach of contract, 2) breach of covenant of good faith and fair dealing, 3) coercion of free speech rights, and 4) violations of various state franchise acts (Mich., Minn., Conn.). Five of the original eight plaintiff groups have since agreed to settlement terms with defendant and, with none of the remaining plaintiffs residing in Michigan or Connecticut, claims related to franchise acts in those states are moot and will be withdrawn.

The remaining three plaintiff groups persist in all available claims and also intend to amend the pleadings to include available tort claims and a claim based upon infringement of their fundamental constitutional and statutory right of association.

At the scheduled hearing on preliminary injunctive relief, with few or no factual questions presented for determination, plaintiffs believe that the Court need only apply the law to the uncontested facts.  At its core, the question before the Court is no more complicated than whether Quiznos' terminations of the plaintiffs' Franchise Agreements was a violation of the covenant of good faith and fair dealing, which is recognized to be a part of every contract under the laws of Colorado, Montana and Minnesota.

### FACTUAL ISSUES FOR DETERMINATION BY THE COURT

As noted above, there is no dispute between the parties concerning any of the material

events surrounding Quiznos' effort to terminate the plaintiffs' Franchise Agreements based upon the TSFA posting of the Baber-suicide materials on its website.  Plaintiffs assert that Quiznos' termination efforts are improper under the applicable laws.  Plaintiffs additionally contend that Quiznos' actual, subjective intent was punitive in nature and part of the broader, continuing effort to destroy the franchisee association.  To the extent the Court believes this subjective intent is relevant, it is the single factual question to be determined.[2]

Plaintiffs are prepared to establish all of the factual assertions made in their Complaint and Motion for Preliminary Injunctive Relief, but believe that under the circumstance of this case the need to present evidence is in large part superfluous and should be limited.  *See* F.R.E. 403 (Court may exercise its discretion to limit or preclude testimony that is duplicative and needlessly cumulative).

Plaintiffs intend to present evidence of TSFA's history, its efforts to assist individual franchisees through collective organization and, most significantly, Quiznos history of using litigation to silence its critics and deter any type of association among the franchisees that might threaten its focus on franchisor growth and profit through product distribution channels.

---

[2]  Quiznos will likely seek to have the Court focus on one or more of the individual plaintiffs' intent in posting the Baber-suicide materials, and whether that intent extended beyond efforts to raise memorial funds for his family. However, as Professor Emerson noted, evaluating whether the "franchisee fail[ed] to act in good faith and in a commercially reasonable manner" is "turn[ing] the question of franchisor 'good cause' on its head."  R. Emerson, *Franchise Terminations: Legal Rights and Practical Effects When Franchisees Claim the Franchisor Discriminates*, 35 Am. Bus. L.J. 559, p.6.

## LEGAL ISSUES FOR DETERMINATION BY THE COURT

I.    Standards for Preliminary Injunctive Relief.

The seminal case of *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 118 (1938), and it progeny[3] from the Supreme Court generally direct that federal courts are to apply state substantive law and federal procedural law. *See Sims v. Great American Life Insurance Co.*, 469 F.3d 870 (10th Cir. 2006). The line between "substantive" and "procedural" content is not fixed, but shifts as the legal context changes. *Lujan v. Regents of the Univ. of Calif.*, 69 F.3d 1511, 1516 (10th Cir. 1995), *quoting Hanna v. Plumer*, 380 U.S. 460, 471, 85 S.Ct. 1136, 1144, 14 L.3d.2d 8 (1965).

Where subject matter is based upon diversity, federal courts must apply the substantive law of the forum state, including that state's choice-of-law provisions. *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005). Fed.R.Civ.P. 65 is considered to be procedural in form, however, the substantive bases for the procedure must be found elsewhere. *Anthony v. Texaco Inc.*, 803 F.2d 593, 597 (10th Cir. 1986).

In this case, the Court's consideration of plaintiffs' motion must rest upon both the procedural aspects of Rule 65 and the underlying substantive state court laws relating to franchising. Each of these is discussed below.

a.    *Federal Standard for Preliminary Injunctive Relief under Rule 65.*

Pursuant to Fed. R. Civ. P. 65, a plaintiff may obtain preliminary injunctive relief when (1) the movant will suffer irreparable harm unless the injunction issues; (2) there is a substantial likelihood the movant ultimately will prevail on the merits; (3) the threatened injury to the movant outweighs any harm the proposed injunction may cause the opposing party; and (4) the

---

[3]    *Guar. Trust Co. v. York*, 326 U.S. 99 (1945); *Byrd v. Blue Ridge Rural Elec. Coop.*, 356 U.S. 525 (1958); *Hanna*

injunction would not be contrary to the public interest. *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1261 (10th Cir. 2004); *Kiowa Indian Tribe of Oklahoma v. Hoover*, 150 F.3d 1163, 1171 (10th Cir. 1998).

The Supreme Court has indicated that the primary "limited purpose" of a preliminary injunction "is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981); *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 1012 (10th Cir.2004) (en banc).

Defendant asserts that plaintiffs seeking reinstatement of their franchises is analogous to the relief sought in *Schrier v. Univ. of Colo.*, 427 F.3d 1253 (10th Cir. 2005), and therefore the injunctive relief sought is mandatory in nature, rather than prohibitory. However, defendant's effort to classify the injunction sought as "mandatory" is a red herring. The parties were placed in position of "status quo ante" by order of the Court following the December 22, 2006 hearing and the relief now sought by plaintiffs is simply to continue the status quo ante positions of the parties until trial of the case on the merits. Quiznos' assertion that it is required to affirmatively "act in a particular way" misrepresents both the facts and the standard the Court should properly apply. Response, p.5. Thus, to the extent that Federal law determines plaintiffs' burden of persuasion, it is to clearly show that relief is warranted, with no need to demonstrate that the four factors weigh heavily and compellingly in their favor. *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 1002-03 (10th Cir.2004) (en banc).

---

*v. Plumer*, 380 U.S. 460 (1965).

b.    *Minn. Franchise Act & State Law Termination Protections*

Each Franchise Agreement contains language stating that, excluding claims relating to trademarks, the agreements are to be interpreted under the laws of the State of Colorado.[4]  *See e.g.*, Abid FAs §21.1.; *see also* excerpted language below from Franchise Agreements, in Section III, b.    However, defendant's response to the motion for injunctive relief elides both the applicable Colorado law concerning the doctrine of good faith and fair dealing, and other applicable state laws – for obvious reasons.

### Abid - Minnesota Franchise Law

Under the Minnesota Franchise Act (MFA), a franchisor may terminate a franchise agreement for good cause.  Minn. Stat. §80C.14(3)(b).  "Good cause" includes any "act by or conduct of the franchisee which materially impairs the good will associated with the franchisor's trademark, trade name, service mark, logotype or other commercial symbol."  Minn. Stat. §80C.14(3)(b)(5).  With any notice of termination under the MFA, the franchisor must provide "written notice setting forth all of the reasons for the termination or cancellation."  Minn. Stat. §80C.14(3).

A notice of termination under the MFA is to be provided at least 90 days in advance of a termination, except it may be effective immediately where the grounds include a "failure to cure a default under the franchise agreement which materially impairs the good will associated with the franchisor's trade name, trademark, service mark, logotype or other commercial symbol after the franchisee has received written notice to cure of at least 24 hours in advance thereof."

---

[4]    Demonstrating Quiznos' pervasive attempt to extend its contractual powers beyond legal limitations, this franchise agreement provision purports to establish that Colorado law will even "prevail in the event of any conflict of law."  Certainly the Minnesota Franchise Act, which expressly mandates that it shall apply notwithstanding even clear contractual choices of other law, is in conflict with Colorado law.  Thus, in its response, defendant refuses to concede application of the MFA, but merely argues that it nonetheless complied with the provision requiring 24

Minn. Stat. §80C.14(3)(1)(3).  This statute also expressly provides that with a violation of the Act, "[i]rreparable harm to the franchisee will be presumed . . . ."  Minn. Stat. §80C.14(1).  A violation of the MFA allows a franchisor to seek rescission damages and attorneys' fees.  Minn. Stat. §80C.17(1), (3).  Finally, the MFA contains a provision voiding any types of waivers:

> Any condition, stipulation or provision, including any choice of law provision, purporting to bind any person who, at the time of acquiring a franchise is a resident of this state, or, in the case of a partnership or corporation, organized or incorporated under the laws of this state, or purporting to bind a person acquiring any franchise to be operated in this state to waive compliance or which has the effect of waiving compliance with any provision of sections 80C.01 to 80C.22 or any rule or order thereunder is void.

Minn. Stat. §80C.21.

The Minnesota Court of Appeals has concluded that, while the Minnesota courts generally honor agreements concerning choice of law, in the context of franchise contracts the legislature recognized the special need to protect franchisees from unfair contracts and other abuses.  *Banbury v. Omnitriton*, 533 N.W.2d 876, 879-780 (Minn.App. 1995).  Therefore, choice of law provisions, like those contained in all Quiznos franchise agreements, are not to be given preclusive effect.  *Id.*

Defendant's actions against the Abids appear to have been undertaken with utter disregard for nearly every protection afforded to franchisees in the State of Minnesota.

### ii.    Fix – Montana Franchise Law

On choice-of-law issues, Montana case law provides that the parties' choice of law in a contract will be effectuated subject to the limitations imposed by §187 of the Restatement (Second) of Conflict of Laws (1971).  *Burchett v. Mastec North America Inc.*, 93 P.3d 1247, 1249 (Mont. 2004).  One exception under the Restatement occurs when:

---

hour notice.  Response, p.20.

> Application of the law of the chosen state would be contrary to a fundamental policy of a state which has a material greater interest than the chosen states in the determination of the particular issue and which under rule of [Restatement] §188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

*Burchett*, 93 P.2d at 1249.

Unlike Colorado, Montana has expressly recognized that a breach of the covenant of good faith and fair dealing gives rise to a tort claim and is subject to an award of punitive damages when warranted by the evidence. *Story v. City of Bozeman*, 791 P.2d 767, 774 (Mont. 1990).

There is little question that in the absence of an effective choice of law by the parties, Montana law would prevail. *Burchett v. Mastec*, 93 P.3d 1247, 1249 (Mont. 2004) (applying Montana's statutory directive for choice of law, Mont. Code Ann. §28-3-103, a contract will be interpreted according to the law and usage of the place where it is to be performed). Further, protection of its citizens' right of a tort claim for breach of good faith and fair dealing represents a fundamental policy of the State of Montana. Based upon these noted protections provided to Montana citizens, the Fix plaintiffs are likely to amend the complaint to include any appropriate tort claims and seek a court determination concerning applicable Montana law.

Montana also recognizes that every contract contains an implied covenant of good faith and fair dealing. *Kuhns v. Scott*, 853 P.2d 1200, 1204 (Mont. 1993); *see also* Mont. Code Ann. §28-1-211 (required standard of conduct under good faith and fair dealing is honesty in fact and the observance of reasonable commercial standards of fair dealing).

Thus, whether measured under Colorado's or Montana's version of the doctrine of good faith and fair dealing, defendant's actions in this case are indefensible. The primary asserted

basis for termination is unrelated to the operation of the restaurants, punitive and pretextual.

### iii.    Bray – Texas Choice of Law

Texas has adopted and codified Section 187 of the Second Restatement of Conflict of Laws concerning contractual choice of law provisions. Tex. Bus. & Com. Code Ann. § 1.105(a) (Vernon 1994). Recognizing the concept of "party autonomy," contracting parties' choice of law will be enforced unless the chosen law has no relation to the parties or the agreement, or their choice would offend the public policy of the state whose laws otherwise ought to apply. *Berrie v. Gantt*, 998 S.W.2d 713, 717 (Tex.App.–El Paso 1999). However, such choice of law provisions will apply only to the interpretation and enforcement of the contract and would not govern tort claims. *Red Roof Inns, Inc. v. Murat Holdings, L.L.C.*, ___ S.W.3d ___, 2006 WL 2458563 (Tex.App.-Dallas Aug. 25, 2006).

Concerning interpretation of the Bray Franchise Agreements for purposes of preliminary injunctive relief, the Colorado choice of law provision is applicable. The applicable Colorado law is discussed below.

### Colorado Law

Under Colorado law, there exists in every contract an implied duty of good faith and fair dealing. *Amoco Oil Co. v. Ervin*, 908 P.2d 489, 498 (Colo. 1995); *Mahan v. Capital Hill Internal Medicine P.C.*, ___ P.3d ___, 2006 WL 3627598 (Colo.App. December 14, 2006). That implied duty may be relied upon whenever the manner of a contractual performance allows for discretion on the part of either party. *Amoco*, 908 P.2d at 498. A party violates the implied duty when it uses its discretion to "act dishonestly or beyond the scope of accepted commercial

practices to deprive the other party of the benefit of the contract." *O'Reilly v. Physicians Mutual Insur. Co.*, 992 P.2d 644, 646 (Colo.App. 1999).

Defendant makes several unpersuasive arguments concerning both the substance and applicability of the doctrine of duty of good faith and fair dealing. First, defendant asserts that plaintiffs simply fail to understand the doctrine and that it cannot alter an express term of the contract. Response, p. 16. The contracts provide that Quiznos has "sole discretion" to make certain determinations under the contract and defendant selectively relies upon this provision. There can be little question this is specifically the type of discretion that, under *Amoco*, mandates the use of good faith and fair dealing. To repeatedly characterize the "sole discretion" provision as an "express" provision of the contract (Response, p.16-17) and therefore outside of the duty of good faith and fair dealing doctrine, is in essence an argument that Quiznos may do whatever it pleases without any possible challenge – legal or otherwise.

The defendant's most expansive argument is based upon the out-of-context quotation from then-D.C. Circuit Court Judge Scalia, in which he stated, "[I]t is possible to so draw a contract as to leave decisions absolutely to the uncontrolled discretion of one of the parties and in such a case the issue of good faith is irrelevant." Response, p. 17. Defendants here, however, fail to demonstrate in any manner that the contracts at issue in this matter contained the Scalia criteria. Regardless, the Judge Scalia dictum is irrelevant where, as here, the controlling law expressly specifies that the duty of good faith applies "when the manner of performance under specific contract term allows for discretion of the party or either party." *Amoco*, 908 P.2d 498.

Defendant then attempts to buttress its argument with a quote from a Tenth Circuit case: "This kind of provision occurs, for example, when either party is given an unconditional power

to terminate the contract . . . by merely giving written notice within a specified time." *Big Horn Coal Co. v. Commonwealth Edison Co.*, 852 F.2d 1259, 1267 (10th Cir. 1988). Defendant again does not demonstrate the existence of a like provision in these Franchise Agreements, nor does it direct the Court to a provision that exculpates Quiznos from the duty of good faith and fair dealing. Despite its repeated arguments that attempt to entirely swallow the doctrine of good faith and fair dealing, it is well-established that the "franchisor-franchisee relationship is one that requires the parties to deal with one another in good faith and in a commercially reasonable manner." *Amoco*, 908 P.2d at 498, *citing Larese v. Creamland Dairies, Inc.*, 767 F.2d 716, 717 (10th Cir. 1985).

c.    <em>Irreparable Harm.</em>

Defendant misrepresents to the Court the law concerning irreparable harm when it states that "[a]s long as a movant would be entitled to money damages if he prevails on the merits, he is not suffering irreparable harm," *mis-citing*[5] *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003). Response, p.6. This is what might be characterized as an all-men-are-Socrates argument that is replete in defendant's Response. The complete statement of law concerning irreparable harm in *Heideman* is as follows:

> To constitute irreparable harm, an injury must be certain, great, actual "and not theoretical." Wisconsin Gas Co. v. FERC, 758 F.2d 669, 674 (D.C. Cir. 1985); accord Prairie Band, 253 F.3d at 1250. Irreparable harm is not harm that is "merely serious or substantial." Prairie Band, 253 F.3d at 1250 (quoting A.O. Smith Corp. v. FTC, 530 F.2d 515, 525 (3d Cir. 1976)). "[T]he party seeking injunctive relief must show that the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." Id. (emphasis in original) (brackets, citations, and internal quotation marks omitted). It is also well settled that simple economic loss usually does not, in and of itself, constitute irreparable harm; such losses are compensable by monetary

---

[5] Defendant incorrectly identifies the cite as a F.2d, rather than F.3d.

damages.  11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal
Practice & Procedure § 2948.1, at 152-53 (2d ed. 1995).

*Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003).

It is plain that plaintiffs' potential losses in this case are not "simple economic" losses,
such as those involved in *Heideman*.  The plaintiffs' losses from an interim period of closing
their stores would be, at best, an incalculable loss of community goodwill and customer base.  At
its worst, and as other courts have easily recognized, the loss would be complete.  In the seminal
and frequently-quoted case of *Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197 (2nd Cir.
1970), the court looked at the loss of a franchise and found that irreparable injury would occur
because the closing would effectively obliterate the auto dealership and that the right to continue
a business is "not measurable entirely in monetary terms."  *Id.* at 1205.

The Seventh Circuit Court of Appeals has also recognized that in determining irreparable
harm, monetary damages may be available but nonetheless inadequate, for four reasons: 1) a
damage award may come far too late to save the business; 2) the plaintiff may not be able to
finance his lawsuit with the revenues from the business; 3) damages may be unobtainable from
the defendant should it become insolvent; and 4) the nature of plaintiff's loss may make damages
very difficult to calculate.  *Roland Machinery Co. v. Dresser Industries Inc.*, 749 F.2d 380, 386
(7th Cir. 1984).  Three of the four criteria are at applicable to plaintiffs in this case.

Of course the Abids' case is slightly different under the Minnesota Franchise Act.
Defendant argues that the Abids cannot demonstrate irreparable harm because they have "good
cause" for termination under the act – putting the cart before the horse.  Response, p.20.  The
applicable Minnesota statute, however, is unequivocal in directing a court that irreparable harm
must be presumed.  Minn. Stat. §80C.14(1).  The alternative claim that the Abid terminations are

validly based upon non-compliance with operating standards is pretextual and belied by the obvious circumstance of their seeking terminations along with all of the other TSFA board members.

To allow Quiznos to terminate the franchise agreements pending ultimate determination of the case would likely cause a total loss of the franchisees' investments, put them in a financial position from which they may never recover, or cause a loss future of business to their stores that would continue well beyond their temporary closing and be immeasurable.

> d. *Substantial Likelihood The Movant Ultimately Will Prevail On The Merits.*

As noted and contrary to defendant's arguments, the injunctive relief sought in this case is neither mandatory nor regulatory in nature, and the standard for granting preliminary injunctive relief is not at a heightened level. *See SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1098 (10th Cir. 1991) (if seeking mandatory injunctive relief, the four core factors must "weigh heavily and compellingly" in the movant's favor before such an injunction may be issued). In fact, plaintiffs assert that they are entitled to have the Court apply a relaxed standard to the requirement of demonstrating a substantial likelihood of success on the merits. *Otero Sav. & Loan Ass'n v. Fed. Reserve Bank of Kansas City, Mo.*, 665 F.2d 275, 278 (10th Cir. 1981).

The Tenth Circuit has held that the basic threshold for a movant to demonstrate that injunctive relief is warranted, is when they have "establish[ed] that each of the [four core] factors tips in his or her favor." *Resolution Trust Corp. v. Cruce*, 972 F.2d 1195, 1198 (10th Cir. 1992). When, however, "the moving party has established that the three 'harm' factors tip <u>*decidedly*</u> in its favor, the 'probability of success requirement' is somewhat relaxed." *Heideman v. South Salt*

*Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (emphasis added).  And most specifically, in *Otero*, the Tenth Circuit held that "when the other three requirements for a preliminary injunction are satisfied, it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation."  *Otero Sav. & Loan Ass'n v. Fed. Reserve Bank of Kansas City, Mo.*, 665 F.2d at 278.

The bloviated discussion in defendant's Response concerning plaintiffs' likelihood of success repeatedly circles back to the assertion that Quiznos has contractual authority, unbridled by the law of any state, to act unilaterally and without good faith in terminating its franchisees. Plaintiffs factual assertions, if proven at hearing, will readily establish irreparable harm, a lack of harm to Quiznos if the injunction issues, and that there is no contrary public interest for such an injunction.  As a result, the issue is whether the facts adduced raise any serious and substantial questions that require fair determination through litigation. If this burden is met, the plaintiffs' motion for preliminary injunctive relief should be granted.

  e.    *Threatened Injury To The Movant Outweighs Any Harm The Proposed Injunction May Cause The Opposing Party.*

Defendant asserts that the balance of harms favors Quiznos, based upon the burden it would suffer under a "mandatory" injunction.  This argument is addressed above and noted to be falsely premised.

Because any alleged harm from the posting of the Baber materials on the TSFA website has been eliminated by this Court's previous order and may be extended under the preliminary injunction until a trial on the merits, Quiznos will suffer *no* harm from the plaintiffs' restaurants

remaining open.  It will, in fact, continue to receive an uninterrupted stream of royalty and product-purchase income from plaintiffs' restaurants' sales.

Any theoretical injury to the Quiznos is minor compared to the Draconian punishment that plaintiffs would suffer by the cessation of the their restaurant operations.

> f.      *The Injunction Would Not Be Contrary To The Public Interest.*

Quiznos' arguments concerning the public interest in its Response again relies upon an claim that the injunctive relief is mandatory in nature and requires no further comment.  An additional argument characterizing the injunction as regulatory in nature and infers that the Court might be placed "in the untenable situation of a long-term supervisor" in the parties' relationship, is contradicted by the comprehensive requirements placed on each restaurant operator under the Franchise Agreements and the detailed operating manuals by which each store operates.  The very concept of franchising eliminates operator discretion and any possible need of detailed court supervision during the pendency of the action.

II.      <u>Asserted Bases for Terminations.</u>

Defendant's termination letters, to be introduced at hearing, failed to state any particular or specific basis for termination; instead they make oblique references to the sections in each Franchise Agreement that were purportedly violated.  As previously noted, these notices failed to comport with a number of state statutes that require the franchisor to specify the misconduct giving rise to the termination.  Only through initiating litigation and the filing of a responsive pleading to the motion for injunctive relief did these plaintiffs eventually obtain a statement for the basis of their terminations:

> Quiznos concluded that this action [of posting the Baber-suicide letter], so clearly intended to harm Quiznos, could not be tolerated with respect to its current franchisees who were responsible for the posting.  Therefore, it identified the

current franchisees who served on the board of directors and exercised its right under the respective franchise agreements to terminate the same.

Response, p.4.

Even this after-the-fact statement makes no pretense about undertaking any pre-termination effort to have the purportedly harmful posting removed, no effort to comply with right-to-cure statutes that were applicable to some of the board members, and demonstrates – on its face – only a punitive intent to terminate the entire franchisee association board, regardless of their individual involvement in the posting decision.   Quiznos' refusal to even specify the purported actions giving rise to the terminations in the termination notices provided to plaintiffs is emblematic of its belief that it may act unilaterally in all matters with unabashed hubris.

III.    Written Agreements - Three Remaining Plaintiffs.

a.    *Termination Provisions*

| Franchisee | Store No. | § Cited | Language of Franchise Agreement | Franchise Agreement |
|---|---|---|---|---|
| Hakim Abid (Allison Abid - Guarantor) | #3652 | FA §18.2(c) | I 8.2 **Termination by Franchisor - Effective Upon Notice**. Franchisor shall have the right, at its option, to terminate this Agreement and all rights granted Franchisee, without affording Franchisee any opportunity to cure any default (subject to any state laws to the contrary, in which case state law shall prevail), effective upon delivery to Franchisee of a termination notice, upon the occurrence of any of the following events:<br><br>(c) **Fraud or Conduct Affecting the Marks**. If Franchisee commits fraud in connection with the purchase or operation of the Restaurant or otherwise engages in conduct that, in the sole judgment of Franchisor, materially impairs the goodwill associated with the Marks; | Page No. 23 |

| | | | | |
|---|---|---|---|---|
| Hakim Abid (Allison Abid - Guarantor) | #3653 | FA §18.2(c) | I 8.2 **Termination by Franchisor - Effective Upon Notice**. Franchisor shall have the right, at its option, to terminate this Agreement and all rights granted Franchisee, without affording Franchisee any opportunity to cure any default (subject to any state laws to the contrary, in which case state law shall prevail), effective upon delivery to Franchisee of a termination notice, upon the occurrence of any of the following events:<br><br>(c) **Fraud or Conduct Affecting the Marks**. If Franchisee commits fraud in connection with the purchase or operation of the Restaurant or otherwise engages in conduct that, in the sole judgment of Franchisor, materially impairs the goodwill associated with the Marks; | Page No. 23 |
| Chris Bray Sabine Bray | #370 | FA §11.1(a) | 11.1. **Business Operations**. Franchisee acknowledges that it is solely responsible for the successful operation of its Restaurant and that the continued successful operation thereof is partially dependent upon Franchisee's compliance with this Agreement and the Operations Manual. In addition to all other obligations contained herein and in the Operations Manual. Franchisee covenants that:<br><br>(a) Franchisee shall maintain a clean, safe, and high quality Restaurant operation and shall promote and operate the business in accordance with the Operations Manual and in such a manner as not to detract from or adversely reflect upon the name and reputation of Franchisor and the goodwill associated with the QUIZNO'S name and Marks. | Page No. 5 |
| Chris Bray Sabine Bray | #838 | FA §18.2(b) | I 8.2 **Termination by Franchisor - Effective Upon Notice**. Franchisor shall have the right, at its option, to terminate this Agreement and all rights granted Franchisee, without affording Franchisee any opportunity to cure any default (subject to any state laws to the contrary, in which case state law shall prevail), effective upon delivery to Franchisee of a termination notice, upon the occurrence of any of the following events:<br><br>(c) **Fraud or Conduct Affecting the Marks**. If Franchisee commits fraud in connection with the purchase or operation of the Restaurant or otherwise engages in conduct that, in the sole judgment of Franchisor, materially impairs the goodwill associated with the Marks; | Page No. 12 |

| | | | | |
|---|---|---|---|---|
| Brad Fix<br>Jan Fix | #353 | FA<br>§10.1(a) | 11.1. **Business Operations**. Franchisee acknowledges that it is solely responsible for the successful operation of its QUIZNO'S Restaurant and that the continued successful operation thereof is, in part, dependent upon the Franchisee's compliance with this Agreement and the Operations Manual. In addition to all other obligations contained herein and in the Operations Manual. Franchisee covenants that:<br><br>(a) Franchisee shall maintain a clean, safe, and high quality QUIZNO'S Restaurant operation and shall promote and operate the business in accordance with the Operations Manual and in such a manner as not to detract from or adversely reflect upon the name and reputation of Franchisor and the goodwill associated with the QUIZNO'S name and Marks. | Page No. 5 |
| Brad Fix<br>Jan Fix | #770 | FA<br>§18.2(b) | I 8.2 **Termination by Franchisor - Effective Upon Notice**. Franchisor shall have the right, at its option, to terminate this Agreement and all rights granted Franchisee, hereunder, without affording Franchisee any opportunity to cure any default (subject to any state laws to the contrary, in which case state law shall prevail), effective upon delivery to Franchisee of a termination notice, upon the occurrence of any of the following events:<br><br>(c) **Fraud or Conduct Affecting the Marks**. If Franchisee commits fraud in connection with the purchase or operation of the Restaurant or otherwise engages in conduct that, in the sole judgment of Franchisor, materially impairs the goodwill associated with the Marks; | Page No. 12 |
| | | FA<br>§18.2(k) | (k) **Repeated Noncompliance**. If Franchisee has received three notices of default from Franchisor within a 12-month period, regardless of whether the defaults were cured by Franchisee; | Page No. 13 |
| Brad Fix<br>Jan Fix | #771 | FA<br>§18.2(c) | I 8.2 **Termination by Franchisor - Effective Upon Notice**. Franchisor shall have the right, at its option, to terminate this Agreement and all rights granted Franchisee, hereunder, without affording Franchisee any opportunity to cure any default (subject to any state laws to the contrary, in which case state law shall prevail), effective upon delivery to Franchisee of a termination notice, upon the occurrence of any of the following events: | Page No. 23 |

22

(c) **Fraud or Conduct Affecting the Marks**. If
Franchisee commits fraud in connection with the
purchase or operation of the Restaurant or
otherwise engages in conduct that, in the sole
judgment of Franchisor, materially impairs the
goodwill associated with the Marks;

     *b.     Choice of Law Provisions*

Each Franchise Agreement contains nearly identical language choice of law provisions[6],

as follows:

21.1 **Governing Law/Consent to Venue and Jurisdiction.** Except to the extent
governed by the United States Trademark Act of 1946 (Lanham Act, 15 U.S.C. §
1051 et seq.) or other federal law, this Agreement shall be interpreted under the
laws of the State of Colorado, and any dispute between the parties, whether
arising under this Agreement or from any other aspect of the parties' relationship,
shall be governed by and determined in accordance with the substantive laws of
the State of Colorado, which laws shall prevail in the event of any conflict of law.
Franchisee and Franchisor have negotiated regarding a forum in which to resolve
any disputes arising between them and have agreed to select a forum in order to
promote stability in their relationship. Therefore, if a claim is asserted in any legal
proceeding involving Franchisee or any Bound Party and Franchisor, the parties
agree that the exclusive venue for disputes between them shall be in the District
Court for the City & County of Denver, Colorado, or the United States District
Court for the District of Colorado, and each party waives any objection it might
have to the personal jurisdiction of or venue in such courts.

## PLAINTIFFS' WITNESSES & TESTIMONY SUMMARIES

Plaintiffs will provide appropriate copies of its witness list to the Court, reporter and

opposing counsel on the morning of the hearing, pursuant to applicable Pretrial and Trial

Procedures of the Court.  Plaintiffs currently anticipate presenting testimony from the following

witnesses:

a.     Plaintiffs will call the following witnesses to present testimony at hearing:

     i.     **Chris Bray**; Plaintiff; Killeen, Texas.
              Summary of Anticipated Testimony:

---

[6] Brady Fix's Franchisee Agreement for Quiznos store number 353, from May 12, 1997, has similar language in a
configuration different from the other agreements.

- Mr. Bray has owned two Quiznos franchise restaurants for approximately ten years. He is the founder and president of the Toasted Subs Franchisee Association, an organization independent of Quiznos comprised of franchisees and existing for the purpose of allowing them to assist one another in improving both their operations and the overall Quiznos brand.
- Mr. Bray has volunteered roughly 20 hours per week for the previous four years to TSFA in order to both create a unified voice among franchisees and share an exchange of ideas among franchisees to increase the profits in their individual operations.
- Both TSFA and Mr. Bray were each the target of previously-filed litigation by Quiznos. Each of those actions involved Quiznos' belief that speech published on TSFA website was actionable. The previously-filed action against TSFA has been resolved in principle, although the formal settlement agreement has not yet been executed nor a stipulated dismissal filed with the Court. The previously-filed action against Mr. Bray remains pending in Denver District Court.
- Mr. Bray, acting jointly with a majority of other TSFA board members, approved a plan to establish a memorial fund on behalf of Bob Baber following his death and to solicit contributions through the TSFA website.
- Mr. Bray, along with TSFA board member Jehad Majed, decided to include in the website posting the suicide note left by Bob Baber because of its poignancy.
- Almost immediately following the posting of the Baber-suicide note on the TSFA website, Mr. Bray received franchise termination notices from Quiznos.
- At the time of the filing of this pleading, approximately $5,000 has been raised and distributed to Ratty Baber, the widow of Bob Baber.
- Mr. Bray will suffer irreparable harm if he is required to cease operations of his business during the pendency of this action.

ii.  **Brad Fix**: Plaintiff; Maple Grove, Montana.
Summary of Anticipated Testimony:

- Mr. Fix owns three Quiznos franchise restaurants. He is a board member of the Toasted Subs Franchisee Association. He has acted as Treasurer of TSFA for approximately two years.
- Mr. Fix, acting jointly with a majority of other TSFA board members, approved a plan to establish a memorial fund on behalf of Bob Baber following his death and to solicit contributions through the TSFA website.
- Mr. Fix did not participate in, or have any foreknowledge of, the decision to include in the website posting the suicide note left by Bob Baber.
- Almost immediately following the posting of the Baber-suicide note on the TSFA website, Mr. Fix received franchise termination notices from Quiznos.
- Mr. Fix will suffer irreparable harm if he is required to cease operations of his business during the pendency of this action.

iii.  **Allison Abid**: Plaintiff; Kalispell, Minnesota.
Summary of Anticipated Testimony:

24

- Ms. Abid is not a franchisee of Quiznos.
- Hakim Abid, Ms. Abid's husband, is the sole franchisee of two restaurants Quiznos is seeking to terminate based primarily upon Ms. Abid's association with the TSFA.
- Ms. Abid signed two documents entitled Guaranty And Assumption of Franchisee's Obligations.  Each document was signed by Hakim Abid as guarantor and she executed each under "SPOUSE'S SIGNATURE".
- Ms. Abid is a certified manager under Quiznos' training systems and has actively managed and directed the operations of the two Quiznos restaurants franchised to Hakim Abid.
- Ms. Abid is a board member of the Toasted Subs Franchisee Association.
- Hakim Abid is neither a member nor a board member of TSFA.
- Ms. Abid was vacationing outside of the country when the TSFA board members met by teleconference and approved a plan to establish a memorial fund on behalf of Bob Baber following his death and to solicit contributions through the TSFA website.  She did not know of the TSFA board meeting, did not participate in or even know of the memorial or website-posting decisions until her husband received franchise termination notices from Quiznos.
- Ms. Abid did not participate in, have any foreknowledge of, or otherwise know about the decision to include in the website posting the suicide note left by Bob Baber until her husband received franchise termination notices from Quiznos.
- Almost immediately following the posting of the Baber-suicide note on the TSFA website, Mr. Abid received franchise termination notices from Quiznos.
- Mr. Abid will suffer irreparable harm if he is required to cease operations of his business during the pendency of this action.

b.    Plaintiffs will provide the Court with copies of the deposition testimony from the

following witnesses on the morning of the hearing.

    i.    **Ratty Baber**:  Long Beach, California.
       Summary of Testimony:

- Ms. Baber was the wife of decedent Bob Baber and, with him owned two Quiznos franchises in Long Beach, California.
- Bob Baber established the Q Subs Franchisee Association, which was originally called the Quiznos Franchisee Association.
- The Babers were involved in litigation with Quiznos that included a ruling by the Calif. Court of Appeals, 2nd App. Dist., in case B186235, on October 31, 2006, which held that the litigation between the Babers and Quiznos should proceed to arbitration and, specifically, should take place in Colorado.
- Bob Baber committed suicide on November 27, 2006
- The Baber-suicide note as posted on the TSFA website was a true and correct copy of the note he left behind both upon his body and on his computer upon his self-inflicted death.

- Ratty Baber provided a copy of the suicide note to Jehad Majed.

ii. **Whittier Police Department Designee Lieutenant J. Piper**:     Whittier, California.
Summary of Testimony:
- The Whittier Police Department investigated the death of Bob Baber that occurred in a Quiznos restaurant in Whittier, California on November 27, 2006.
- As part of the police investigation, evidence was collected at the scene.  Some of that evidence was released to Ratty Baber, some was maintained by the police but copied on to a CD-ROM disk and provided to Ratty Baber.
- The evidence remaining in police custody includes a "flash drive" that contains a suicide note left by Bob Baber.
- Lt. Piper personally conducted a comparison of the suicide note in police custody and the note posted on the TSFA website and found them to be identical.

c.     Plaintiffs <u>may</u> call the following witnesses to present testimony at trial if the need arises:

i. **Patrick Meyers**:  General Counsel, Quiznos; Denver, Colorado.
Summary of Testimony:
- Mr. Meyers is a 2% owner in the approximately 40-50 intertwined companies that comprise the franchisor "Quiznos".
- It was his decision to immediately seek termination of all of the restaurants operated by, or in any way related to TSFA board members, upon learning of the posting of the Baber-suicide note on the TSFA website.
- He conducted no investigation, nor directed any investigation be conducted concerning the basis for the posting of the Baber-suicide note on the TSFA website prior to directing termination of all of TSFA board members' restaurants.
- He conducted no research nor any investigation into the applicable state laws concerning, or limiting the termination of, the various TSFA board members prior to directing termination of all of the TSFA board members' restaurants.
- On December 6, 2006 and January 30, 2007 he did not believe any Quiznos franchise agreement interpreted under the laws of the State of Colorado was subject to an implied covenant of good faith and fair dealing.

e.     Plaintiffs will call the following expert witnesses to present testimony at trial:

                     None.

f.     Defendants have indicated they intend to call an expert witness at the hearing.  Plaintiffs

object to this witness on a variety of grounds.

        Defendants disclosed only the name of this witness (Les Patten) on the afternoon of

26

Friday, February 3, 2007.  This disclosure was made six business days prior to the Preliminary Injunction hearing and exactly six weeks following the hearing on December 22, 2007 in which the Court directed the parties to cooperate in discovery.

The disclosure failed to identify whether this witness is an employee of the defendant or a specially retained expert.  No disclosure was made of Mr. Patten's curriculum vitae, qualifications, publications, or compensation.  *See* F.R.Civ.P. 26(a)(2)(B).  Nor was there disclosed any type of prepared written report, any statement as to all opinions he would express and the basis and reasons therefore, nor any data, information, exhibits to be used as summary of or support for his opinions.  *Id.*

Further, there is no evidentiary basis under which expert testimony will assist the determination of the Court in this case.  F.R.E. 702.  This is a straight-forward matter involving an uncontested set of events and a judicial application of well-established law to make a legal determination.

## EXHIBITS INTENDED TO BE INTRODUCED AT HEARING

Plaintiffs will provide appropriate copies of its exhibit list to the Court and opposing counsel on the morning of the hearing, pursuant to applicable Pretrial and Trial Procedures of the Court.

DATED:    February 9, 2007.
          Denver, Colorado

Respectfully submitted,

**GREGORY R. STROSS
ATTORNEY AT LAW**

/s Gregory R. Stross
Gregory R. Stross
1700 Lincoln Street
Suite 2940
Denver, Colorado 80203
(303) 339-0647
(303) 572-5111 (fax)
gstross@earthlink.net
Attorney for Plaintiffs

and

Justin Klein
Marks & Klein, LLP
63 Riverside Avenue
Red Bank, New Jersey 07701
(732) 747-7100
(732) 219-0625 (fax)
justin@marksklein.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 9, 2007, I served the following via Electronic Mail upon:

*Plaintiffs' Trial Brief For Hearing On Preliminary Injunction*

lmacphee@perkinscoie.com — Leonard H. MacPhee, Esq.
fredric.cohen@dlapiper.com — Fredric A. Cohen, Esq.

/s Gregory R. Stross
Gregory R. Stross